UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KAREN WILLIAMS<br><br>    Plaintiff,<br><br>    v.<br><br>WAL-MART STORES, INC.,<br><br>    Defendant. | Case No. 19-cv-06026<br><br>Judge John Robert Blakey |

## MEMORANDUM OPINION AND ORDER

From 2004 until 2008, Plaintiff Karen Williams was employed by Defendant Wal-Mart Stores ("Walmart") in Rolling Meadows, Illinois. She worked primarily as a sales associate in the automotive department, responsible for running the cash register, assisting customers, and stocking the shelves with windshield wipers, headlights and oil. Her foray into the automotive industry followed a long career in reporting; Williams graduated from Creighton University and spent twenty-four years as a broadcast journalist. She brought this professional training, along with prior retail experience, with her to Walmart. Now, Williams alleges that during her four-year tenure, she was systematically overlooked in Walmart's promotional hiring on account of her gender.

Williams was originally part of a class action lawsuit against Walmart that commenced over fifteen years ago. *See Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D.

137 (N.D. Cal. 2004). After the United States Supreme Court reversed the lower court's order certifying a nation-wide class in that case, *see Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), Williams brought this action, alleging that Walmart violated Title VII of the Civil Rights Act of 1964 by engaging in sex discrimination. Walmart now moves for summary judgment on the grounds that Williams cannot "make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial." [81] at 2 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)). Specifically, Walmart contends that Plaintiff cannot succeed on her failure-to-promote claim because Plaintiff: (1) relies on a position that "no longer existed" at the time of promotion; and/or (2) fails to identify a less-qualified male employee promoted in her stead. *Id.* For the reasons explained below, the Court agrees and grants Defendant's motion, [80].

## I. Background[1]

Before turning to Karen Williams, step for a moment into Walmart's internal staffing operations. Walmart employs a strict managerial hierarchy: a Store Manager sits at the top of the hierarchy, followed by Assistant Store Managers ("ASMs") who trail closely behind. [89] ¶¶ 5–6. In select stores, Walmart also slots a Co-Manager between the ASM and Store Manager for a third high-level management position. *Id.*

---

[1] The Court draws the facts from the record and the parties' Local Rule 56.1 statements and responses, *see* [82], [89].

Beneath these three managerial layers, hourly Department Managers oversee hourly Sales Associates, who are assigned to a specific department (*e.g.*, Sporting Goods, Housewares, Menswear). *Id.* Some of these departments are considered specialty divisions, including, as relevant here, the Tire & Lube Express ("TLE") division. *Id.* ¶ 8. These specialty divisions occasionally employ personnel structures that differ from those of other departments. *Id.* Importantly, until 2006, the TLE Department offered a specialty manager role similar to an ASM, termed the "TLE Manager." *Id.* ¶ 13; *see also* [83-2] ¶ 10.[2] The TLE Department Manager reported to the TLE Manager. [89] ¶¶ 12–13. In 2006, Walmart phased out the TLE Manager role, with all prior responsibilities subsumed into the duties of an ASM. *Id.* ¶ 13.

In 2006, Walmart also unveiled a new online hiring and promotion system known as "Career Preference." [89] ¶ 64. The online system allows potential applicants to "apply" for positions that have not yet become available by listing specific roles as "Interests" in their Career Preference portal. *Id.* When an "Interest" ripens into a vacancy, Walmart employees are automatically "matched" with available roles. *Id.* As part of this new hiring and promotion system, Walmart started to require completion of certain online assessments. *Id.* ¶ 66. For an associate to be eligible for promotion to an hourly supervisory position (*i.e.*, Department Manager), for example, that associate generally must take and pass the

---

[2] The parties dispute the degree of responsibility borne by the TLE Manager. *Compare* [82] ¶ 13 ("Until 2006, the salaried manager responsible for the TLE at Store 2815 was the TLE Manager (a 'specialty manager' role similar to an ASM, but with responsibility over only the TLE.") *with* [89] ¶ 13 (Response) ("Plaintiff admits that an hourly TLE Manager position was phased out and an ASM absorbed responsibility for the TLE department. Plaintiff disputes that the TLE Manager was solely responsible for the TLE department.").

"Supervisory Leadership Assessment." *Id*. In order for an associate to be eligible for promotion to an entry-level salaried, management position (*i.e.*, MIT), that associate generally must take and pass the "Tactical Leadership Assessment." *Id*.

That brings us back to Karen Williams. Williams grew up around cars; she "always worked on cars, ever since [she] was young." [83-1] at 42:11–18. In September 2004, Williams started as a Sales Associate in the automotive division (TLE Department) at Walmart's Store Number 2815. [88] at 2; [89] ¶ 21.[3] As an associate in TLE's Department 10 (auto merchandise sales), Williams was responsible for stocking and assisting customers with merchandise and running the cash register. [89] ¶ 10. She reported to an hourly TLE Department Manager, among others. *Id*. ¶ 12 (Response) (explaining that the Co-Manager and Store Manager oversee and manage the TLE department); ¶ 13 (Response) (same). Until 2006, the TLE Department in Store 2815 also had an active TLE Manager. *Id*. ¶ 13.

Enter Cassandra Delong ("Delong"). When Walmart hired Plaintiff, Delong was already in place as TLE Manager. [89] ¶ 67. Delong left her position in July 2006, when Walmart began to phase out the TLE Manager role, and she transitioned

---

[3] In her complaint (and deposition), Plaintiff stated that she joined Walmart as a "Greeter." [1] ¶¶ 75–76 ("When Williams first joined Walmart in 2004, she worked as a Greeter [and] was promoted to a Sales Associate" in early 2005."); [83-1] at 4–40:22 ("Q. The position you started in, was it the greeter position?" "A. That is correct."). In response to Defendant's Local Rule 56.1 Statement, Plaintiff admits that, per Walmart's records, she was hired on September 27, 2004 as a Sales Associate in Department 10, [89] ¶ 21, and states in her brief that she "was hired by Walmart in September 2004 as a Sales Associate," [88] at 2. For present purposes, though, the Court notes that: (1) the two positions are within the same pay class, "with no pay differential," [83-2] ¶ 29; and (2) neither side raises Williams' original position as an issue with respect to her failure-to-promote claim. *See also* [89] ¶ 16 ("Every associate's position is assigned to a particular Pay Class based on its job responsibilities. Jobs in the same Pay Class have the same minimum starting pay rate." "Response: Admit.") (citations omitted). Thus, for purposes of this decision, any distinction in the two positions is immaterial.

into the role of an ASM. *Id.* ¶ 68. Walmart did not replace Delong; instead, another ASM absorbed the TLE Manager's responsibilities. *Id.* ¶ 69. Plaintiff attempted to replace Delong as TLE Manager but was advised instead to consider applying for the MIT program to become an ASM. *Id.* ¶¶ 69–71. While Walmart has no record of Plaintiff applying for the MIT program, Plaintiff asserts that she applied. *Id.* ¶ 72; [83-1] at 160:5–7 ("Q. So you ended up applying for MIT, correct?" "A. Yes."). Immediately thereafter, Plaintiff learned that Walmart had put a hiring freeze in place and temporarily suspended the MIT program. [89] ¶ 73; *see also* [83-1] at 160:8–22 ("Q. Do you know when you applied for MIT?" "A. No. I don't recall. Right before they shut it down, I know that."). Walmart has no record of anyone participating in an MIT program at Store 2815 during the term of Plaintiff's employment there. [89] ¶ 74.

In opposition to Walmart's motion for summary judgment, Plaintiff points to another promotional opportunity as the basis for her claim of sex discrimination against Walmart. *See generally* [88]. A few months after Williams started at Walmart, a TLE Department Manager position became available at Store 2815. [92] ¶ 81. Recall, the TLE Department Manager falls one step below the TLE Manager. *See id.* ¶¶ 12–13; [83-2] ¶ 10. Jose Rodriguez ("Rodriguez"), a Service Technician who worked in Department 37 (auto service), was selected for the position and received a pay increase of $.80/hour. *Id.* ¶¶ 81, 85; *see also* [89] ¶ 81.[4] At the time of his

---

[4] The parties quibble over the degree of separation between Department 10 (auto service) and Department 37 (auto merchandise). *See* [92] ¶ 82 (Response) ("Admitted that Department 10 and Department 37 are separate departments. As relevant to Walmart's motion, however, they are two arms of the TLE Department, which were managed by a single TLE Manager until July 2006, and

promotion, Rodriguez had worked for Walmart for approximately 18 months, [88] at 2; [92] ¶ 90 (Response), and of those 18 months, only one was spent in Department 10, [89] ¶ 85; *see also* [88] at 6 (comparing Department 10 and Department 37). *But see* [92] ¶ 85 (Response) ("Rodriguez spent approximately six weeks (not one month) of his 1.5 years in the TLE Department working in Department 10."). He had no prior retail experience before working at Walmart, [92] ¶ 86, and he had no college degree or relevant educational experience, *id*. ¶ 87. In addition, at the time of his promotion, he was under an active "coaching," meaning that he was ineligible for promotion until February 24, 2005. *Id*. ¶¶ 88–89 ("Walmart policy dictated that no employee could be promoted within one year of a coaching . . . Rodriguez had a coaching issued on February 24, 2004, and thus should have been ineligible for promotion until February 24, 2005."). According to Plaintiff, Walmart promoted Rodriguez over her, even though her background and experience made her a far-superior candidate. [88] at 3.

## II. Legal Standard

Summary judgment is appropriate where the movant shows, through "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory

---

then by a single Assistant Store Manager ('ASM')."). The record makes plain that the duties of Walmart employees within the two departments are distinct: in Department 10, associates are responsible for stocking and assisting customers with merchandise, and running the cash register; employees in Department 37 deal more directly with basic automotive services, such as oil changes, battery replacements, and tire replacements, *etc*. [89] ¶¶ 83–84. It is therefore reasonable to infer, as Plaintiff suggests, that prior experience in Department 10 is more valuable for an employee seeking a managerial role in Department 10 than prior experience in Department 37. *See* [88] at 2–3 (arguing that Rodriguez was less qualified given that "[h]e worked almost exclusively in department 37 as a Service Technician, where he performed car services such as tire and battery replacements rather than the retail services provided by Sales Associates.").

answers, or other materials" that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Cosmano v. Lottery*, No. 17 C 569, 2021 WL 5050283, at *3 (N.D. Ill. Nov. 1, 2021). In resolving a motion for summary judgment, the court has "one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted).

In order to withstand a motion for summary judgment, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The Court must construe the record "in the light most favorable to the nonmovant" and avoid "the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). If the evidence, however, is "merely colorable, or is not significantly probative," *Liberty Lobby*, 477 U.S. at 249 (citations omitted), or merely raises "some metaphysical doubt as to the material facts," summary judgment may be granted, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, in order to overcome the undisputed facts set forth in a defendants' motion for summary judgment, a plaintiff cannot rest upon the allegations in her complaint but instead must point to affidavits, depositions or other admissible evidence to demonstrate that a genuine dispute of material fact exists between parties. Fed. R. Civ. P. 56(e)(2).

### III.  Analysis

Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  Until recently, motions for summary judgment in employment discrimination cases were analyzed under two "methods" of proof.  Under the first, the "direct method," courts evaluate whether the plaintiff presented sufficient evidence that the employer's discriminatory animus motivated an adverse employment action. *Harper v. Fulton County, Ill.*, 748 F.3d 761, 765 (7th Cir. 2014).  Under the "indirect method" or the *McDonnel Douglas* burden-shifting approach, "the plaintiff has the initial burden of establishing that (1) she is a member of a protected class, (2) she performed reasonably on the job in accord with her employer['s] legitimate expectations, (3) despite her reasonable performance, she was subjected to an adverse employment action, and (4) similarly situated employees outside of her protected class were treated more favorably by the employer." *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017) (internal citations omitted).  Upon the plaintiff's showing, the burden ordinarily shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *Id*.  And, if the employer succeeds in articulating a legitimate, nondiscriminatory reason for the action, the burden shifts once more, back to the plaintiff to show that the employer's explanation is nothing more than pretext.  *Id*.

That changed following the Seventh Circuit's decision in *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760 (7th Cir. 2016). There, the court clarified that the correct legal standard "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id.* at 765. The Seventh Circuit did away with the stark distinction between direct and indirect evidence, reducing the ultimate question to: "has the non-moving party produced sufficient evidence to support a jury verdict of intentional discrimination?" *David*, 846 F.3d at 224 ("*Ortiz* explicitly instructed district courts to stop separating direct from indirect evidence and proceedings as if they were subject to different legal standards." (internal quotation marks omitted)). Nevertheless, the familiar *McDonnell Douglas* framework remains a useful "means of organizing, presenting, and assessing circumstantial evidence in frequently recurring factual patterns in discrimination cases." *Id.* (citing *Volling v. Kurtz Paramedic Servs., Inc.*, 840 F.3d 378, 383 (7th Cir. 2016)). Because the usefulness of the *McDonnell Douglas* framework survived *Ortiz*, and because the parties have "presented [their] argument[s] in those terms," the Court will begin by analyzing whether Plaintiff has established her *prima facie* case of discrimination. *Id.* at 224. Thereafter, of course, the Court will "assess cumulatively all of the evidence presented by [Williams] to determine whether it permits a reasonable factfinder to determine that" she was discriminated against on the basis of gender. *Id.*

In this case, Williams alleges that Walmart denied her promotional opportunities on the basis of sex.[5] In order to establish a *prima facie* case in the failure-to-promote context, Plaintiff must show that: (1) she belongs to a protected class; (2) she applied for and was qualified for the position sought; (3) she was rejected for that position; and (4) the employer granted the promotion to someone outside of the protected group who was not better qualified than the plaintiff. *Grayson v. City of Chi.*, 317 F.3d 745, 748 (7th Cir. 2003) (citing *Johnson v. Nordstrom, Inc.*, 260 F.3d 727, 732 (7th Cir. 2001)). It is undisputed that Plaintiff falls within a protected class.

In her complaint, Plaintiff alleges that she was passed over for the TLE Manager position in 2006, following Delong's departure. [1] ¶¶ 80–82. Specifically, Plaintiff alleges that when Delong "left Walmart to pursue a new opportunity" she "informed her store manager that she was interested in applying for [Delong]'s position, as she had experience performing the job." *Id.* ¶ 80. Delong's position, at that time, was TLE Manager, [83-4] ¶ 5, and Plaintiff testified that she expressed interest in the position "[r]ight after Sandy left." [83-1] at 154:2. Williams was informed that "the position was not currently available, but Walmart would possibly consider her in the future if the position opened up again." [1] ¶ 81.

Based upon the record, however, Plaintiff's theory regarding the TLE Manager position flounders on the second element of her *prima facie* case. In order to establish that she "applied for and was qualified" for the position sought, she needs to show

---

[5] In her initial complaint, Plaintiff also lodged claims for pay discrimination. *See, e.g.*, [1] ¶¶ 77–78. Following Walmart's motion for summary judgment [81], Plaintiff waived those claims, [88] at 2 n.1 ("In her original complaint, Williams also asserted pay discrimination claims. Williams foregoes those claims now.").

that: (1) she applied; (2) she was qualified; and (3) "there was in fact a position open." *McMahon v. Dunlap Cmty. Unit Sch. Dist. No. 323*, 274 F. Supp. 3d 836, 846 (C.D. Ill. 2017). As the record demonstrates, and as Plaintiff admits, Walmart was in the process of "phasing out" the TLE Manager position. *See* [89] ¶ 13 (Response) ("Plaintiff admits that an hourly TLE Manager position was phased out and an ASM absorbed responsibility for the TLE department."); ¶ 68 ("Delong left the position of TLE Manager in July 2006 when that position was phased out and took an ASM position at Store 2815." "Response: Admit." (internal citations omitted)). Moreover, it is undisputed that "Delong was not replaced as TLE Manager." *Id.* ¶ 69; *see also* [83-4] ¶ 5 (Delong remained in the TLE Manager role "until July 2006, when the TLE Manager position at Store 2815 was phased out. At that time, [she] transferred to a position as a salaried [ASM] at Store 2815, and [she] later transferred back to Store 2215 as an ASM. [She] was not replaced as TLE Manager."). As such, Walmart cannot be held liable for failing to consider Plaintiff for a position that ceased to exist. *See Simms v. Blue Cross Blue Shield Assoc.*, No. 01 C 7385, 2003 WL 1877639, at *9 (N.D. Ill. Apr. 14, 2003) ("In the absence of an open position, the Plaintiff cannot prevail under the burden-shifting framework. . . . Plaintiff's claim is further doomed because the position could neither remain open nor could it have been filled.").

In the alternative, Plaintiff asserts in her complaint that Walmart "also discriminated against [her] by failing to promote her to an Assistant Manager position." [1] at ¶ 83. In order to become "a salaried ASM," a Walmart associate "generally must have been selected for and completed Walmart's MIT program."

[89] ¶ 61. *But see* [83-2] ¶ 82 n.4 ("Exceptions can be made for a particularly qualified candidate with relevant experience, such as an associate who previously held a high-level management position for [a] competitor."). Plaintiff testified that, following Delong's departure in 2006, she met with the Store Manager (Keith Kogut) "about replacing Delong as TLE Manager," and he recommended instead that she "apply to the MIT program to train to become an ASM." [89] ¶ 70; [83-1] 153:9–156:20; *see also* [89] ¶ 71 ("According to Plaintiff, Kogut said that she was 'doing a great job,' told her he would be 'happy for [her] to be involved in the MIT program,' walked her to Human Resources, and 'signed off' on her applying."); *see also* [83-1] at 153:9–156:20, 158:7–159:6.

The parties dispute, however, whether Plaintiff actually applied for the MIT training program. *Compare* [81] at 10–11 ("[T]here is no record of Plaintiff ever identifying MIT (or ASM, for that matter) as an Interest in the Career Preferences system or taking/passing the required TLA assessment [and] Plaintiff's failure to apply to the MIT program is fatal to her promotion claim." (citations omitted)); *with* [83-1] 163:7–12 ("Q. What happened with respect to applying for the assistant manager position, did you ever apply for it? A. Yes. Q. When did you apply for it? A. I don't recall the date."). As explained further below, this dispute is immaterial.

Assuming Plaintiff applied for the MIT program, her claim still fails. To succeed on her MIT-based failure-to-promote theory, Plaintiff must show that Walmart granted the promotion to a person outside the protected group who is not better qualified. *See Grayson*, 317 F.3d at 748. In an effort to make the requisite

showing, Plaintiff asserts that "[a]round the same time" that she expressed her interest in the MIT program, she learned that Rodriguez "had been allowed into the MIT program by Williams' regional manager." [1] ¶ 85. She believes he "was allowed to join the MIT program because he was part of the 'boys club' Williams' regional manager fostered at her store and was male." *Id*. Plaintiff, however, admits that "Walmart has no record of anyone participating in an MIT program at Store 2815 during Plaintiff's employment there," and Rodriguez "did not participate in the MIT program while employed at Store 2815." [89] ¶ 77 (Response). In fact, the record confirms that he did not participate in an MIT program until 2009, 22-months *after* Plaintiff left Walmart. *Id*. Beyond Rodriguez, Plaintiff does not identify, and the record does not otherwise supply, a less-qualified individual outside of Williams' protected class who was admitted to the MIT program in her stead. [83-1] at 169:19–170:4 ("Q. Anyone else that you think was treated better than you with respect to their gender when it comes to the MIT Program? A. No, not that I know of right now.").[6] Absent any showing that Walmart passed over Plaintiff for a less-qualified

---

[6] Williams believes that Rodriguez applied for and enrolled in the MIT program during her tenure at Walmart. *See, e.g.*, [83-1] 168:1–169:22. In her opposition, though, Plaintiff does not address Defendant's argument that she failed to identify a less-qualified male admitted to the MIT program. *Compare* [81] at 11 ("[S]he identifies no one with whom she competed but who was promoted to the MIT program over her. That alone is fatal to her claim." (internal citations omitted)); *with* [88] at 2–3 (discussing only Rodriguez's 2005 promotion to TLE Department Manager). Thus, it appears that Plaintiff has waived any argument to the contrary. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver"); *Laborers' Intern. Union of North America v. Caruso*, 197 F.3d 1196, 1197 (7th Cir. 1999) (holding that arguments not presented in response to a motion for summary judgment are waived); *De v. City of Chi.*, 912 F. Supp. 2d 709, 734 (N.D. Ill. 2012) ("Failure to set forth any evidence or to develop any arguments in opposition to the moving party's summary judgment motion results in waiver of the nonmoving party's arguments and an abandonment of [her] claims").

individual outside of her protected class for the MIT training program, Plaintiff cannot establish her *prima facie* case.

Rodriguez was, however, promoted once during Plaintiff's employment with Walmart; he was promoted several months into Plaintiff's tenure to a newly-vacant TLE Department Manager role. [88] at 2. In her opposition to Defendant's motion for summary judgment, Plaintiff asserts, for the first time, that she was discriminated against on account of her gender when Walmart promoted Rodriguez to the TLE Department Manager role instead of her in 2005. *Id.* at 5.

This theory, however, appears nowhere in the complaint. In the complaint, Plaintiff alleges that: (1) she was denied the TLE Manager position upon Delong's departure in 2006, *see* [1] ¶¶ 80–82; and (2) she was denied the opportunity to participate in the MIT program in order to become an ASM, *id.* ¶¶ 83–85. She makes no reference to the TLE Department Manager position vacancy in or before 2005. It is well settled that "a plaintiff may not amend her complaint through allegations made in response to a motion for summary judgment." *Griffen v. Potter*, 356 F.3d 824, 830 (7th Cir 2004); *Warren v. Solo Cup. Co.*, 516 F.3d 627, 629 n.3 (7th Cir. 2008) (affirming dismissal of claim not raised in complaint, finding it waived).

Even so, Plaintiff has failed to marshal sufficient support to withstand summary judgment on this theory as well. In arguing that she applied for the position, Plaintiff points only to her own "unequivocal" testimony that she spoke with her store manager about the position, expressed her interest, and applied. [88] at 5 (citing [83-1] at 153:9–23; 162:12–163:12). But, when read in full, the cited portions

of Plaintiff's deposition relate to the TLE Manager position, *see* [83-1] 153:9–154:2 (discussing her interest in Delong's position, TLE Manager, *following* Delong's departure), the MIT program, and the ASM position, *see* 158:4–6 ("Q. And that was signing off for you to get into MIT? A. Yes."); 158:22–3 (same); 161:17–23 ("Q. Did you ever express interest in the assistant manager position . . . at Wal-Mart? A. Yes. Q. When did you express interest? A. Right before [Rodriguez] left for a while."). Plaintiff attempts to explain the dearth of evidence in the record by arguing that Walmart "failed to produce Plaintiff's hard-copy personnel file and Career Preferences data during her relevant period of employment—the only files that could demonstrate Plaintiff's interest in and desire for the TLE Department Manager position." [88] at 6; *see also* [89] ¶¶ 72 (Response) ("Walmart has no record of Plaintiff applying for or expressing an interest in management positions because Walmart destroyed Plaintiff's hard copy personnel file."). This Court has already considered the parties discovery disputes at length, *see* [60], [71], and Plaintiff cannot now survive summary judgment by pointing to a purported absence of evidence relating to her *prima facie* case. *See NLRB v. Lous A. Weiss Mem'l Hosp.*, 172 F.3d 432, 446 (7th Cir. 1999) ("An absence of evidence does not cut in favor of the one who bears the burden of proof on an issue."). Indeed, the absence of evidence on an element of Plaintiff's *prima facie* case supports the party moving for summary judgment. *Garcia v. GFG Corp.*, 202 F.3d 273 (7th Cir. 1999) ("The moving party may meet its burden to show a lack of a material issue by demonstrating 'that there is an absence of evidence to support the nonmoving party's case.'" (citations omitted)).

In viewing the record as a whole under the *McDonnell Douglas* framework, the Court finds that Plaintiff has failed to establish a *prima facie* case on her failure-to-promote claim. Nor can the Court reach a different conclusion by assessing all of the record evidence without the assistance of the *McDonnell Douglas* paradigm; for the same reasons, Plaintiff has failed to produce sufficient evidence to support a jury verdict of intentional discrimination. *David*, 846 F.3d at 228; *see also McMahon*, 274 F. Supp. 3d at 850. Accordingly, the Court grants Defendant's motion for summary judgment, [80].

## IV. Conclusion

For the reasons stated above, the Court grants Defendant's motion for summary judgment [80] and directs the Clerk to enter judgment in favor of Defendant and against Plaintiff on her claim. Civil case terminated.

Dated: March 22, 2022        Entered:

_____
John Robert Blakey
United States District Judge